ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Application Under the Equal Access to Justice Act of -- | ) ) ) | |
| Buck Town Contractors & Co. | ) ) | ASBCA No. 60939-EAJA |
| Under Contract No. W912P8-09-D-0052 | ) | |

APPEARANCES FOR THE APPELLANT: W. Lee Kohler, Esq.
Douglas A. Kewley, Esq.
Thomas F. Gardner, Esq.
Gardner & Kewley, APLC
Metairie, LA

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
Engineer Chief Trial Attorney
William G. Meiners, Esq.
Engineer Trial Attorney
U.S. Army Engineer District, New Orleans

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

Pending before the Board is the application for fees pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, submitted by appellant, Buck Town Contractors & Co. (Buck Town). Because we find that the government's litigating position was substantially justified, we deny Buck Town's application.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The United States Army Corps of Engineers (government) awarded a contract to Buck Town, to reconstruct a hurricane protection levee in St. Charles Parish, Louisiana. *Buck Town Contractors & Co.*, ASBCA No. 60939 *et al.*, 20-1 BCA ¶ 37,486 at 182,073. As detailed in our decision, the contract required placement of a layer of geotextile material at the base of the levee, to be installed in continuous machine-direction lengths without seams, with all seams and overlaps to be installed perpendicular to the centerline of the levee. In order to minimize waste, Buck Town's subcontractor, Circle LLC (Circle), installed two full-length 120-foot rows of geotextile from each 300-foot roll and then formed rows by joining the 60-foot remainders with an overlap running parallel to the centerline of the levee. *Id.* Buck Town documented its installation method in its daily reports; the government's quality assurance inspectors failed to note any defects in the work; government representatives visited the site three times and took photographs showing the overlapping geotextile; the contracting officer and project engineer visited

the site on occasions when Circle installed overlapping geotextile without commenting on the installation; and the government noted that the work was acceptable in its checklist for the initial phase of the project. *Id.* at 182,084-85. The government subsequently objected to Circle's work after one reach of the levee was complete (and the geotextile buried under several feet of fill) and another reach had a large part of the geotextile installed. *Id.* at 184,073. Buck Town was required to remedy this situation by degrading the levee and installing a second layer of geotextile material in rows without seams before rebuilding the levee to the required elevation. *Id.*

In installing the second layer of geotextile, Buck Town failed to timely perform the required quality-control tests of the fabric required by the contract. After tested material produced conflicting results, the government ordered Buck Town to exhume full-width samples of the second layer of geotextile material actually installed in the levee. The tests of exhumed geotextile material failed to meet the strength specified in the contract. The government subsequently required Buck Town to degrade a portion of the levee and install a third layer of geotextile material, and again rebuild the levee to grade. *Id.* at 184,073-74.

In March 2016, Buck Town submitted its claim to the contracting officer alleging entitlement to $2,996,746.62, and asserting legal theories of constructive change, latent ambiguity, and economic waste. *Id.* at 182,081. The government denied the claim in September 2016. Although Buck Town did not explicitly raise a waiver argument with regard to the first levee reconstruction, the contracting officer wrote that Buck Town appeared to be making a waiver argument and rejected waiver as a basis for recovery. *Id.*

Buck Town timely appealed to the Board. Its initial complaint asserted three claims: a claim for the first rework of the levee (claim 1 - ASBCA No. 60939); an allegation that the government's direction to exhume a sample of the second layer of installed geotextile material constituted a constructive change to the contract (claim 2 - ASBCA No. 60940); and an allegation of economic waste pertaining to the second rework of the levee (claim 3 - ASBCA No. 60941). *Buck Town*, 20-1 BCA ¶ 37,486 at 182,074. Buck Town filed a motion for partial summary judgment, regarding counts 1-3 of its complaint, but subsequently withdrew its motion with regard to count 3. *Buck Town Contractors & Co.*, ASBCA No. 60939, 18-1 BCA ¶ 36,951 at 180,060 n.1.

Regarding count 1, Buck Town alleged that the contract permitted its method of installation using partial-length pieces of geotextile, or alternatively, that the specifications were ambiguous. In its reply brief, Buck Town belatedly raised a waiver argument. In an opinion dated January 11, 2018, we denied Buck Town's motion for summary judgment, and held that the contract required Buck Town to install the geotextile in full-length rows without seams parallel to the centerline of the levee. *Id.* at 180,059. We declined to consider the waiver argument raised in

2

Buck Town's reply brief. *Id.* In September 2018 – two months before the hearing – Buck Town filed an amended complaint that asserted a waiver argument and abandoned its claim 2. The government moved to strike the newly asserted waiver argument on the basis that the Board lacked jurisdiction to entertain the claim as it was not first presented to the contracting officer. Given the short time before the hearing, the Board deferred consideration of the government's motion to strike. In our decision dated December 17, 2019, we first held that the Board possessed jurisdiction to entertain the waiver theory because it was the "same claim" as presented to the contracting officer. *Buck Town*, 20-1 BCA ¶ 37,486 at 182,083. We then held that Buck Town had demonstrated entitlement for claim 1 pursuant to a constructive waiver theory, based on knowledge imputed to the contracting officer, but denied entitlement for Buck Town's claim 3. *Id.* at 182,083-86.

On April 27, 2020, Buck Town submitted its EAJA application, seeking $253,901.63 in attorney fees and costs (app. mot., ex. 5). The government opposes Buck Town's application.

DECISION

The EAJA provides that a business with a net worth less than $7,000,000 that prevails before the Board "shall [be] award[ed]" the fees and other expenses that it incurred unless the position of the government was "substantially justified" or other circumstances make such an award unjust. 5 U.S.C. § 504; *see also Rex Sys.*, *Inc.*, ASBCA No. 52247, 02-1 BCA ¶ 31,760 at 156,854. The government does not oppose Buck Town's EAJA application on the basis of Buck Town's status as a prevailing party, or its net worth, and does not challenge the timeliness of the application. Rather, the government argues that Buck Town is not eligible for EAJA fees, because the government's litigating position was substantially justified. (Gov't resp. at 6)

To prevail in its substantial justification defense, the government is not required to prove that it had a substantial likelihood of victory in the litigation, but it does bear the burden of proof to demonstrate that "a reasonable person could think [the government's position is] correct, that is, [that] it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988); *Rex Sys.*, 02-1 BCA ¶ 31,760 at 156,854 (quoting *Pierce*). Substantial justification is determined on the basis of the entire record before the Board, and the entirety of the government's conduct. *Job Options*, *Inc.*, ASBCA No. 56698, 11-1 BCA ¶ 34,663 at 170,761. The government's litigating position is more likely to be substantially justified when greater "legal uncertainty" is presented, such as when there is a question of first impression. *Rex Sys.*, 02-1 BCA ¶ 31,760 at 156,855 (citing *Pat's Janitorial Serv.*, *Inc.*, ASBCA No. 29129, 86-2 BCA ¶ 18,995 at 95,923). In addition, the government's litigating position is more likely to be substantially justified when there are close factual questions and the Board's resolution of

3

the appeal turns upon the weight, persuasiveness and credibility assigned to conflicting evidence. *Job Options*, 11-1 BCA ¶ 34,663 at 170,761.

Buck Town asserts that the government's actions were not substantially justified because there was no uncertainty regarding the controlling law and the Board's finding of a constructive waiver of specifications was supported by an established theory of recovery (app. mot. at 4). The government, in turn, asserts that its conduct was substantially justified because it prevailed on the majority of issues, the Board's decision was based on an extraordinary remedy, the government prevailed on summary judgment on a question of contract interpretation, and because Buck Town only asserted the legal theory of waiver in its amended complaint two months before the hearing (gov't resp. at 8-21). The determination of entitlement to an award pursuant to EAJA should be based on the government's conduct as a whole, including the agency's administrative actions, rather than examining the government's conduct on individual issues. *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990); *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).

Here, Buck Town presented three claims to the government. Buck Town prevailed on its first claim (first levee reconstruction), but withdrew the second claim (constructive change to exhume geotextile sample) following discovery, and did not prevail on its third claim (economic waste for second levee reconstruction).

Regarding the first claim, Buck Town initially alleged that there was a constructive change because the contract permitted Buck Town to install the geotextile with parallel overlaps, or that there was a latent ambiguity in the specifications. Buck Town moved for summary judgment with regard to its interpretation of the contract. In its reply brief, Buck Town raised, for the first time, its waiver argument. We denied Buck Town's motion for partial summary judgment on contract interpretation, holding that the contract prohibited the installation of geotextile with overlaps parallel to the centerline of the levee, and declined to consider its waiver argument as the argument was not raised in its opening brief. *Buck Town*, 18-1 BCA ¶ 36,951 at 180,059.

These facts tie-in to the government's other main arguments – that its actions were substantially justified because the government appropriately responded to Buck Town's original theories of constructive change and ambiguity, prevailed on the contract interpretation issue on summary judgment, and then, after Buck Town raised its waiver argument, that the government relied upon established law holding that only the contracting officer could modify the contract. Buck Town did not assert a waiver claim until its amended complaint, two months before the hearing. In our decision, we held that the waiver claim was the "same claim" because it relied on the same operative facts, but that it was a "new" legal theory. *Buck Town*, 20-1 BCA ¶ 37,486 at 182,083. The fact that the contracting officer interpreted Buck Town's claim as asserting a waiver argument does not change our analysis. Buck Town did not assert a waiver

4

claim until it filed its amended complaint, and the government's actions in defending against the allegations actually contained in Buck Town's complaint (contract interpretation) were substantially justified – in fact we agreed with the government's interpretation of the contract. *Buck Town*, 18-1 BCA ¶ 36,951 at 180,059.

Although Buck Town did not assert its waiver argument until it filed its amended complaint, the government was certainly aware of the argument when Buck Town belatedly raised the issue in its reply brief in support of its motion for summary judgment. We find that the government's litigating position was still substantially justified because it had a reasonable basis in fact and law, relying on the typical argument that the government's failure to object to a contractor's actions does not constitute waiver. *Pierce*, 487 U.S. at 566 n.2. The government characterizes our holding that there was a constructive waiver as a "deviation from the norm" (gov't resp. at 10). Although it is true that a waiver defense is rarely successful, we disagree that our holding was a "deviation from the norm" and believe instead that that the facts in the appeal, rather than our holding, were a departure from the normal circumstances. Here, we found that Buck Town's actions in installing the geotextile were so conspicuous, including expressly detailing its actions in the daily reports, that the contracting officer should have known of the actions. These facts created a special situation, but we cannot hold that the government lacked legal justification in relying upon the normal legal rule. In fact, we recently re-affirmed the rule that the government's mere failure to object does not constitute waiver in *Watts Constructors, LLC*, ASBCA No. 61493, 20-1 BCA ¶ 37,563 at 182,387. Accordingly, we find that the government's litigating position was substantially justified.

## CONCLUSION

For the reasons stated above, Buck Town's application for fees and costs pursuant to EAJA is denied.

Dated: October 2, 2020

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

5

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60939-EAJA, Appeal of Buck Town Contractors & Co., rendered in conformance with the Board's Charter.

Date: October 2, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals